```
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF FLORIDA

                                    CASE NO. 09-20216-CIV-GOLD
                                    MAGISTRATE JUDGE P.A. WHITE
GWENDOLYN COLLINS,        :

     Plaintiff,           :

v.                        :              REPORT OF
                                    MAGISTRATE JUDGE
HOMESTEAD CORRECTIONAL    :
INSTITUTION, et al.,
                          :
     Defendants.
_____
```

## I  INTRODUCTION

Plaintiff Gwendolyn Collins, who is confined at Homestead Correctional Institution ("HCI"), brought suit in this case under 42 U.S.C. §1983, concerning conditions she encountered when she was placed on a prison bus in September 2008, when HCI was evacuated as a precaution because Hurricane Ike was posing a threat to Florida. Collins was directed to amend the initial pleading (Order, DE# 4), and her amended complaint (DE# 7) and second amended complaint (DE# 15), together, have been construed to be the operative complaint.

Following an Amended Preliminary Report (DE#20) the case remained pending against four defendants: HCI Warden S. Porter; HCI Assistant Warden J.D. Thornton; Captain R. Love; and Sergeant S. Patterson. (DE#24, Order Adopting Amended Preliminary Report). Collins' allegations were summarized in the Report, as follows:

> The plaintiff alleges that she has suffered permanent physical and emotional injuries resulting from a bus ride on September 5, 2008 when HCI was evacuated due to an imminent hurricane . She alleges specifically that she was forced to stand for 12 hours on a severely overcrowded bus, and the four defendants were aware that there were no bathroom facilities, an insufficient amount of water and poor ventilation.  She claims that as a result of the traumatic bus ride she now has permanent urinary problems and psychological problems.

(DE#20, at p.4). Thereafter, claims brought against the defendants in their official capacities were dismissed (see Motion DE#27, Report DE#34, Objections DE#s 31 and 49, and Orders DE#s 45

and 57), and the case remained pending on claims brought against the four defendants in their individual capacities.

**This Cause is now before the Court upon a Motion for Summary Judgment (DE#63) filed jointly by defendants Porter, Thornton, Love and Patterson,** with supporting exhibits "A" through "H" (filed at DE#63-1), as to which the plaintiff Collins was advised of her right to respond (<u>see</u> Order of Instructions, DE#64).[1] Plaintiff

---

[1] Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to interroga-tories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted)

Thus, in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted). Thus, pursuant to <u>Celotex</u> and its progeny, a movant for summary judgment bears the initial re-sponsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. <u>Hoffman v. Allied Corp.</u>, 912 F.2d 1379, 1382 (11 Cir.1990).If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genu-ine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11 Cir.), <u>cert.</u> <u>denied</u>, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to

Collins has filed two Responses (DE#s 65, and 66); and the defendants have filed a Reply (DE#67).[2]

## II  DISCUSSION

The defendants argue that they are entitled to summary disposition of the amended complaint in their favor because the plaintiff has failed to show that her Eighth Amendment rights were violated; she cannot recover damages under §1983 on a theory of negligence; they are entitled to qualified immunity; and pursuant to 42 U.S.C. §1997e(e) the plaintiff is barred from recovery of damages, in the absence of showing a physical injury that is something more

---

sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11 Cir.1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir.1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing Anderson v. Liberty Lobby, Inc., supra).

Pursuant to Brown v. Shinbaum, 828 F.2d 707 (11 Cir. 1987), the Order of Instructions (DE#643) was entered to inform the plaintiff Collins of her right as a *pro se* litigant to oppose the defendants' motion for summary judgment (DE#63). The Order provided Collins with explicit instructions regarding the requirements under Rule 56 for a proper response to such a motion.

[2]     The defendants are correct in arguing in their Reply (DE#67) that entirely new allegations of alleged harassment by defendant Love, which are raised by way of Collins' Response opposing summary judgment, are not properly before this court. The subject matter of this lawsuit consists of claims that Collins was subjected to unconstitutional conditions of confinement on September 5, 2008. Collins cannot amend her complaint by attempting to raise new claims for the first time, in a Response to an opposing party's motion for summary judgment. See: Gilmour v. Gates,McDonald & Co., 382 F.3d 1312 (11 Cir. 2004)( party cannot amend by adding new claims through argument in a brief opposing summary judgment); Grayson v. O'Neill, 308 F.3d 808, 817 (7 Cir. 2002) (same); Morgan Distributing Co., Inc. v. Unidynamic Corp., 8686 F.2d 992, 995 (8 Cir. 1989) (same). Cf Coral Ridge Properties, Inc. v. Playa Del Mar Ass'n, Inc., 505 So.2d 414 (Fla. 1987) (Overton, J., dissenting). Should Collins believe that she has valid claims against Love, or any other state official, which she did not raise in her amended §1983 pleadings in this case [DE#s 7 and 15], she may pursue them by filing a new complaint, in a new case.

than *de minimis* which is shown to have resulted from a constitutional violation at the hands of a defendant or defendants.

In support of their motion, the defendants have submitted eight exhibits. They consist of: <u>Exhibit A</u>, an Affidavit of Assistant DOC Secretary George Sapp, with attached Exhibits <u>A-1</u>, a NOAA Hurricane Map, and <u>A-2</u>, Florida Governor's Executive Order 08-187; <u>Exhibit B</u>, Inmate Collins' 8/21/09 deposition; <u>Exhibit C</u>, Warden Porter's Affidavit, and attached <u>Exhibit C-1</u> the Homestead CI Evacuation Emergency Plan; <u>Exhibit D</u>, the Affidavit of Assistant Warden Thornton; <u>Exhibit E</u>, the Affidavit of Captain Love; <u>Exhibit F</u>, the Affidavit of Sergeant Patterson; <u>Exhibit G</u>, consisting of medical records pertaining to inmate Gwendolyn Collins; and <u>Exhibit H</u>, the Affidavit of Dr. Shashi Razdan, the HCI Medical Director.

Careful review of the record, including the defendants' motion and exhibits, and the Plaintiff's Responses and exhibits attached thereto, reveals that on the claims which form the subject matter of the amended complaint (DE#s 7, 15), the plaintiff Collins cannot prevail, and the defendants are entitled to summary judgment, and qualified immunity. This is because, in the absence of a showing of deliberate indifference on the part of any of the four defendants, the plaintiff Collins has failed to establish the violation of her Eighth Amendment rights by them.

The affidavits of the defendants establish the following. On September 2, 2008, the Florida DOC became aware, through warnings issued by the National Oceanic Atmospheric Administration (NOAA), that Hurricane Ike had formed in the Atlantic Ocean; and by September 4 NOAA announced that Ike had strengthened, and was a Category 4 storm. On September 5, 2008, the Governor signed Executive Order 08-187 declaring a State of Emergency. Due to the threat, it was determined that HCI, a DOC facility with old structures less likely to survive Category 4 force winds than those at newly built prisons, was deemed to be vulnerable. It was determined that, for the safety of inmates and staff, evacuation of HCI had to be undertaken quickly, and the institution's inmates, all of whom

are female, were moved by bus to Lowell CI, in Ocala. In addition to the female inmates from HCI, inmates from Hollywood Work Camp, and Broward C.I. were also evacuated. In all, there were in excess of 7,000 inmates in South Florida at the time, and 1,517 of them were evacuated. The DOC had a limited fleet of buses equipped with bench seating, ventilation, and a urinal located in the back of each bus. Due to urgency of the situation, each institution was instructed to place 65 inmates on each bus, and to place 3 inmates on each seat/bench. To effect as early an evacuation as possible (to avoid possible loss of life or limb due to storm winds), while at the same time maintaining security to minimize risk to the public (e.g., possible risk of escape), procedures were implemented to load the buses as quickly as possible, and then, barring any road-side emergency, the buses were required to travel in a caravan, without stopping until they reached their final destination. The female inmates, including Collins, were quickly placed on their respective buses. The Evacuation Procedure provided that food and water was to be available on each bus. There was a keg of water on each bus, and each inmate was to be provided two drinks as part of a bagged lunch. In addition, bathroom facilities (urinals) were are on each bus at the rear of the vehicle. As stated in the Affidavit of Assistant Secretary Sapp, procedures such as those implemented to move the HCI prisoners, including inmate Collins, to Lowell CI are used only in emergencies; and under those circumstances "certain luxuries such as air conditioning, an unlimited supply of water, and a private bathroom" had to "take second place to making sure our inmates were taken out of harms way of the approaching Category 4 storm."

HCI Warden Porter's Affidavit establishes that she was advised of the State of Emergency on September 5, and that it was the DOC Regional Office that mandated and coordinated transportation of the inmates. In addition to reiterating the aforementioned information about provision of buses and their features, the provision of food and water, and the fact that for security reasons the drive had to be non-stop, Porter's Affidavit indicates that Flex Cuffs were applied to the inmates' legs. Porter's Affidavit also indicates

that due to the presence of the urinal at the back of each bus, there was no need for any inmates to wet themselves while seated on the bench seats, or to "hold their urine for the entire trip." Porter states that she had no authority or control over the number of buses that were provided, nor the number of inmates that the Regional Office ordered were to be transported in each vehicle. Porter was aware of inmates' complaints that they did not want to leave the air conditioned environment that was present before the storm at HCI; but she was not present on any of the buses, and did not hear any complaints about the water supply until after the storm threat had passed and inmate Collins and other prisoners were returned to HCI.

HCI Assistant Warden Thornton establishes the same facts with regard to the nature of the Emergency, notice of it, the provision of buses, and mandate regarding the number of inmates that were to be placed on each vehicle, as well as the provision of food and water, and bathroom facilities. Through his Affidavit, Thornton establishes that he, like Warden Porter, had no say regarding the number of buses that were available, or number of inmates that were to be placed on each one; and although he heard inmates' complaints about leaving the air conditioning at HCI, he also did not hear complaints about water supplies on the buses before they left HCI.

Captain Love's Affidavit establishes she was advised of the state of emergency on September 5, and that her assigned role was to help load inmates onto the buses. She had no control over the number of buses, or the number of inmates that she and other officers were ordered to place in each vehicle. Nor did she have knowledge of where each bus went after it was loaded and left the HCI compound.

Sergeant Patterson's Affidavit establishes that she too was told of the emergency on September 5, and that her assigned role was to place flex cuffs on inmates' legs, and to usher them on to the buses through the rear doors of the vehicles. According to her Affidavit, each inmate was handed a bagged lunch that consisted of

two sandwiches, fruit, and two drinks. Patterson also reiterates that each bus had a urinal, so there was no need for any inmate to wet herself, or hold her urine for the entire duration of the trip. Patterson states that she (like Love) did not know where a bus went after it was loaded, and left the HCI compound. She also had no control over the provision of buses, or the number of inmates ordered to be placed on each one.

Finally, the Affidavit of Dr. Razdan indicates that on September 28, 2009 [a year after the events which form the subject matter of the amended complaint DE#s 7 and 15], she performed a physical examination of inmate Collins, including a pelvic exam. Razdan states that at the time Collins indicated her belief that her uterus was falling out of place (a condition called uterine prolapse), but that her examination of Collins revealed no uterine anatomical abnormality such as prolapse. Collins had also complained to Dr. Razdan of a burning sensation upon urination. Dr. Razdan explains that urinary tract infections, which can be easily and quickly treated, can sometimes cause such discomfort, but that her physical exam of Collins did not reveal any objective signs that she suffers a burning sensation when passing urine.[3] Dr. Razdan further states that when she examined Collins in late September 2009, she asked Collins why she had not sought medical help earlier, if she believed she either had a burning sensation while urinating, or believed that she had a prolapsed uterus, and Collins responded, "I forgot." (DE# 63-1, pp. 155-156).

---

[3] It is noted that Plaintiff's medical records, filed at DE#63-1, include records indicating presence of and treatment of what was diagnosed as a probable yeast infection, for which Clotrimazole cream was prescribed, in Mid November 2008, some eight weeks before the original complaint was signed. (See Report of Gynelogical Exam, DE#63-1, p. 121)

At deposition, Collins stated that prior to the [September 5, 2008] bus trip she never had to get up in the middle of the night to urinate. She stated that she went to the Doctor after she caught a yeast infection, and told the doctor that she can't hold her urine, and that it burns when she urinates (T/47-48). The Doctor told Collins that the problem was probably due to a yeast infection. Collins stated that the doctor prescribed a cream, which cleared up the yeast infection. She stated at deposition, however, that her bladder problem persisted, and Collins stated at deposition that "My bladder hurts" and "My uterus sits very low since this trip. (T/48).

At deposition (DE#63-1, Ex.B), Collins stated that the buses were hot and poorly ventilated (see T/36), that there was not enough water, and that on her bus inmates were told that there was nothing that could be done because they had consumed the available water during the first two hours of the trip. (See, Depo. T/42). Collins stated that she did not attempt to drink water when it was made available, because she was worried that others would not have enough. (See T/44).

In addition, at deposition, Collins stated that she and other inmates became incontinent (see T/42), so that the bus smelled because there was urine on the floor (T/42). Collins also stated at deposition that she does not remember if any of the inmates on her bus asked officers for permission to use bathroom facilities. (T/38). She added that even if there was a place to urinate at the back of the bus, it would have been difficult to reach, because the bus was overcrowded, with 17 more inmates on it than the normal capacity (T/38).

At deposition, Collins stated her belief that defendants, including Porter, Patterson, and Love were aware that there were no toilets on the buses because inmates were yelling their protests out of the windows on the buses. When Collins was asked how she knew that Assistant Warden Thornton and others knew that there were no toilets on the bus, she responded "because we were saying out the window that there were no toilets, okay, and he was there." Collins added that Sergeant Patterson said: "Listen, the trip is short, You are not going on a long trip. Just hold it." (T/65-66).

Review of the Collins' deposition testimony reveals her acknowledgment upon questioning that she was aware that the urinal was at the back of the bus. Collins stated, however, that she "did not even know that the damn thing was a urinal," and that "it looked like a sink." She further stated that she personally did not know it was a urinal until she got her interrogatories back. She further argued, at deposition, that according to the definition she

8

found in the Oxford Dictionary, a urinal is a place or receptacle for men to urinate in. (DE#63-1, p.78, Depo. T/66).

In sum, there is evidence that the buses, including the vehicle Collins was on, were crowded, and hot and uncomfortable because they had no air conditioning. There is evidence that, apart from the two drinks provided to each inmate in her lunch bag, on Collins' bus there was a communal water supply, but it was consumed early in the trip, and no additional water was available because for security reasons the buses were not to stop until they reached their final destination at Lowell CI. Finally, there is evidence that on her bus, Collins and some other inmates suffered urinary incontinence while they were en route from HCI to Lowell CI.

As noted by the District Court for the Northern District of Florida in Hernandez v. Santa Rosa Correctional Institution, et al., No. 3:05CV39/MCR/EMT, 2006 WL 1494008, at *3 (N.D.Fla., May 24, 2006), a case involving Eighth Amendment claims that arose from events which occurred during a hurricane evacuation of Florida DOC prisoners in 2004, the Eighth Amendment "does not authorize judicial reconsideration of 'every governmental action affecting the interests or well-being of a prisoner.'" Hernandez, supra, at *3 (quoting Campbell v. Sikes, 169 F.3d 1353, 1362 (11 Cir. 1999)(quoting, in turn, Whitley v. Albers, 475 U.S. 312, 319 (1988)). As further noted by the Court in Hernandez, "If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'" Hernandez, supra, at *3 (quoting Chandler v. Crosby, 379 F.3d 1278, 1288-89 (11 Cir. 2004) (quoting in turn Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Prison conditions rise to the level of a constitutional [Eighth Amendment] violation only when they involve the wanton and unnecessary infliction of pain. Hernandez, supra, at *3 (citing Chandler, supra, at 1288-89; Hope v. Pelzer, 536 U.S. 730, 737 (2002); Farrow v. West, 320 F.3d 1235, 1242 (11 Cir. 2003); and Campbell, supra, 169 F.3d at 1362).

Thus, although the Constitution does not and the Court cannot dictate the general conditions that should exist in jails and prisons by substituting its views for those of legislators and jail administrators, the Constitution does require conditions of confinement imposed by states to meet certain minimum standards. Bell v. Wolfish, 441 U.S. 520, 552 (1979); Hamm v. DeKalb County, 774 F.2d 1567, 1571 (11 Cir. 1985), cert. denied, 475 U.S. 1096 (1986). The Eighth Amendment applied through the Fourteenth Amendment prohibits the infliction of cruel and unusual punishment and thereby places limitations on the conditions in which the State may confine those convicted of crimes. Robinson v. California, 370 U.S. 660 (1962); Rhodes v. Chapman, 452 U.S. 337 (1981); Hamm, 774 F.2d 1567.

The United States Circuit Court of Appeals for the Eleventh Circuit has held that in order to prevail on an Eighth Amendment claim for damages under section 1983, in addition to the requirement that the defendant must have acted under color of state law, a plaintiff must prove three elements: 1) the infliction of unnecessary pain or suffering, Rhodes, 452 U.S. at 347; 2) deliberate indifference on the part of the defendant(s), Wilson v. Seiter, 501 U.S. 294, 302-03 (1991); and 3) causation, Williams v. Bennett, 689 F.2d 1370, 1389-90 (11 Cir. 1982), cert. denied, 464 U.S. 932 (1983). The first two elements of an Eighth Amendment claim, the 'objective' and 'subjective' elements, must both be satisfied. LaMarca v. Turner, 995 F.2d 1526, 1535 n. 17 (11 Cir. 1993)(citing Hudson v. McMillian, 503 U.S. 1 (1992)). Various conditions, alone or together, may make intolerable an otherwise constitutional term of imprisonment, Rhodes at 347; Ingraham v. Wright, 430 U.S. 651, 669 n.38 (1977); however, only unnecessary and wanton infliction of pain rises to the level of cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312 (1986).

Only such a degree of disregard for the prisoner's rights, which offends evolving contemporary standards of decency and is repugnant to the conscience of mankind, separates official conduct that is actionable under Section 1983 from simple negligence which

is not. When the plaintiff fails to allege and show proof of such an abuse, what may be an ordinary tort does not rise to the level of a constitutional violation actionable under Section 1983. Rhodes, 452 U.S. at 347; Ingraham v. Wright, 430 U.S. 651, 670 n.38 (1977); Estelle v. Gamble, 429 U.S. 97, 106 (1976); Byrd v. Clark, 783 F.2d 1002, 1006 (11 Cir. 1986); Hamm, 774 F.2d at 1572; Williams, 689 F.2d at 1380 (11 Cir. 1982). Negligence, alone, cannot be a basis for recovery under §1983. Davidson v. Cannon, 474 U.S. 344 (1986); Daniels v. Williams, 474 U.S. 327 (1986); Estelle, supra, 429 U.S. at 104-06.

The standard may be met if the state is deliberately indifferent to prisoners' basic necessities and fails to provide reasonably adequate food, clothing, shelter, and sanitation. Hamm, supra, 774 F.2d at 1572. A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment. Carter v. Galloway, 352 F.3d 1346, 1349 (11 Cir. 2003) (citing Helling v. McKinney, 509 U.S. 25 (1993)).

The deprivation alleged must be, objectively, "sufficiently serious." Wilson v. Seiter, 501 U.S. 294, 298 (1991); Hudson v. McMillian, 503 U.S. 1 (1992). The prisoner must show that he or she is incarcerated under conditions that pose a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 834 (1994). This risk violates the Eighth Amendment's requirement "that inmates be furnished with basic human needs, one of which is 'reasonable safety.'" Helling, 509 U.S. at 33 (quoting DeShaney v. Winnebago County Dept. Social Services, 489 U.S. 189 (1989)).

Regarding the second requirement, deliberate indifference, the prison official who ignores a substantial risk of serious harm to an inmate must have a "sufficiently culpable state of mind," Farmer v. Brennan, supra, 511 U.S. at 834. Traditionally, applicable authorities have described "deliberate indifference" as a state of mind more blameworthy than mere negligence or even gross negligence, Davidson v. Cannon, 474 U.S. 344 (1976); Estelle,

11

supra, 429 U.S. at 104; Parker v. Williams, 862 F.2d 1471 (11 Cir. 1989), and as something more than a lack of ordinary due care for a prisoner's safety. Whitley v. Albers, 475 U.S. 312 (1986).

With regard to the third requirement, there must be an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation, see: Zatler v. Wainwright, 802 F.2d 397, 401 (11 Cir. 1986); LaMarca v. Turner, 995 F.2d 1535, 1536 (11 Cir. 1993). "Personal participation ... is only one of several ways to establish the requisite causal connection," Zatler v. Wainwright, supra at 401, and thus, personal participation is not the sine qua non for the defendants to be found personally liable. Swint v. City of Wadley, Ala., 5 F.3d 1435, 1446 (11 Cir. 1993), opinion modified on other grounds, 11 F.3d 1030 (11 Cir. 1994). The defendant official must, however, be aware of and ignore a substantial risk of serious harm to the inmate. In such cases, a finding of liability requires a showing that the responsible official was subjectively conscious of specific facts from which the inference could be drawn that a substantial risk of harm to the prisoner exists, and the official must also "draw the inference." Farmer v. Brennan, supra, 511 U.S. at 837; Carter v. Galloway, supra, at 1349 (noting that in order to be held liable, the existence of a serious risk of harm and legal causation, alone, are not enough).

In this case, while the plaintiff Collins' allegations were clearly sufficient to withstand scrutiny at initial screening, and to allow the case to go forward, when the allegations of the amended pleading were reviewed under the liberal pleading standard that applies at that stage of a *pro se* §1983 suit for damages, at this later stage of the litigation, when the defendants have filed their evidentiary motion pursuant to Rule 56, and the plaintiff has had opportunities to respond, it is apparent for reasons discussed below that plaintiff Collins has failed to establish the existence of Eighth Amendment claims against each of the named defendants.

This is so, despite the fact that there is evidence of record that the conditions on Collins' bus were unpleasant and uncomfortable. Even if it could be argued that the conditions encountered by Collins on the bus might, under ordinary circumstances, be sufficient to offend contemporary standards of decency, the record does not contain evidence from the plaintiff that refutes each of the defendants' showings that they were not deliberately indifferent to Collins' right to be free from conditions that offend the Constitution, and that at least with respect to some if not all of the conditions, there was no causal connection between them [the defendants] and the deprivations alleged.

With respect to the question of crowding on the bus, the HCI defendants' motion and Affidavits establish that the plaintiff cannot show a causal connection between them and the condition of confinement/alleged deprivation. The record establishes that the HCI defendants [Porter, Thornton, Love, and Patterson, who respectively are the Warden, an Assistant Warden, a Captain, and a Sergeant] were not in control of the evacuation plan, or the availability of buses to be used for the evacuation that was mandated. The evacuation was the result of an Executive Order, and the plan which the defendants were required to carry out was not designed at the institutional level.

With respect to the alleged inadequacy of water on the bus, there is simply no evidence that any of the defendants, including the Warden and Assistant Warden, or the Captain and Sergeant who were involved in putting the inmates in leg restraints and actually placing them on the bus, were aware that the communal water supply, complemented with two additional drinks in each of the inmates' meal bags, would not be sufficient for the duration of the trip. There is no suggestion or evidence that, given their assigned duties, the Captain and Sergeant [Love and Patterson] could be said to have any responsibility for ensuring that there was enough water on the bus. Even if such a responsibility fell on the shoulders of the Warden or Assistant Warden [Porter and Thornton], it appears

that any failure to recognize that a larger water supply was needed was, at most, negligence, which is not a basis for §1983 liability. There is simply no evidence that any of the four defendants was aware of facts from which it could be concluded that with regard to the water supply there was a substantial risk of serious harm to the inmates including Collins, that the defendants drew an inference that such a risk existed, and that they nonetheless failed to act to prevent it. See Farmer, supra, at 837; Carter, supra, at 1349.

The same is true with regard to the alleged lack of or inadequacy of sanitary facilities on the bus. While Collins claims that she personally was not aware that the sanitation receptacle at the back of the bus was a urinal, she has stated at deposition that she is unaware if any inmate told a guard that they had to void, and needed to use a toilet or urinal. Under the circumstances that an emergency evacuation was being undertaken to safeguard the well-being of the inmates, where all of the inmates on the bus were female, and presumably the guards on the bus were of the same gender, it cannot be said that providing a bus that had a urinal in the rear, rather than a traditional enclosed toilet that may have afforded more privacy, was unreasonable so as to violate Collins' constitutional rights. Although Collins claims that she and other inmates called from bus windows to DOC staff members outside, yelling that there were no toilets, there is no evidence to indicate that those complaints were actually heard by the named defendants. Moreover, even if the verbal protests were heard, in light of the fact that there was a receptacle for urination at the rear of each bus, it cannot be said that failure of the Warden, Assistant Warden, the Captain, or Sergeant to respond, if they did hear the verbal complaints, constituted deliberate indifference. Finally, if the defendants did not personally undertake to instruct the female inmates on the bus that the receptacle was a urinal and that they should use it if they needed to urinate, the failure to do so might be a matter of negligence, but not deliberate indifference. There is no evidence to establish that the defendants anticipated occurrence of the conditions on the bus

[stemming from incontinency of some of the inmates about which plaintiff Collins complains], and that they failed to take steps to prevent them from occurring.

Finally, there is Collins' allegation that she has sustained a lasting physical injury as a result of the events of September 5, 2008. She contends that before the hurricane evacuation she was able to sleep through the night without getting up to go to the bathroom; and that now she feels a burning sensation when she voids, and cannot hold her urine for long periods of time. This she claims is the result of having attempted to contain her urine while she was on the bus on September 5, 2008, until it became too painful for her to do so. Apart from her own statements in her pleadings, and in her Responses opposing the defendants' summary judgment motion, there is no medical evidence to substantiate that the alleged symptoms were a result of the bus ride and Collins' containment of urine for a lengthy period of time (on the order of hours). Even if there were the suggestion of a casual connection between the alleged physical symptoms which Collins now claims to experience, and her prolonged attempt to avoid urination on the bus on 9/5/08, there is no showing that the risk of physical harm to Collins was or could have been contemplated by any of the defendants, and prevented through some action or actions which they failed to take. (There was a urinal on the vehicle, and there is no evidence to show that the defendants would not reasonably have contemplated its use by Collins and other inmates on her bus while the vehicle was en route to Lowell C.I. Here, there is no necessity for the Court to engage in a lengthy analysis regarding whether Collins' present alleged injury is sufficient to satisfy the physical injury requirement of 42 U.S.C. §1997e(e).[4]

---

[4] With the enactment of the Prison Litigation Reform Act of 1995 (the "PLRA") effective April 26, 1996, and its codification and inclusion of a physical injury requirement at §1997e(e), the requirements relating to injury for various kinds of inmate civil rights claims changed.

Section 1997e of the PLRA provides in pertinent part, as follows.

> No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional

15

In sum, absent any showing that the defendants were aware of facts indicating that plaintiff Collins was at substantial risk of harm, and that they drew the inference from those facts that the risk of harm existed and yet failed to act to prevent the known risk, the plaintiff Collins has failed to make a requisite showing that the defendants were deliberately indifferent to her right to be free from unconstitutional conditions of confinement.

Here, the defendants have invoked the affirmative defense of qualified immunity, which protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When faced with a question of qualified immunity, the Courts pursuant to Saucier v. Katz, 533 U.S. 194, 199-200 (2001) overruled in part by Pearson v. Callahan, 129 S.Ct. 808 (2009),[5] have until recently engaged in a two-step analysis: first asking [taking the facts in the light most favorable to the plaintiff/non-movant] whether the official's alleged conduct violated the plaintiff's constitutional rights, and then proceeding, if necessary, to a second question, whether the right was clearly established at the time of the conduct. If the court,

---

facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

See 42 U.S.C. §1997e(e). The Eleventh Circuit has interpreted §1997e(e) to mean that if due to a defendant's actions, a prisoner has not suffered some physical injury which is sufficient to satisfy the statutory provision in question (i.e., that is something more than a *de minimis* injury), and the prisoner therefore cannot show anything more than mental or emotional suffering, the prisoner is foreclosed from obtaining compensatory or punitive damages even if there has been some violation of his constitutional rights. See Harris v. Garner, 190 F.3d 1279, 1286-87 (11 Cir. 1999), vacated in part and reinstated in part, Harris v. Garner, 216 F.3d 970, 984-85 (11 Cir. 2000) (en banc); Chatham v. Adcock, et al., No.07-14995, 334 Fed.Appx. 281, 284-85, 2009 WL 1788719, at **1-3 (11 Cir. June 24, 2009); Quinlan v. Personal Transport Services Co., LLC, No. 08-14121, 329 Fed.Appx. 246, 249, 2009 WL 1564134, at *2 (11 Cir., June 5, 2009).

[5]   Following the Supreme Court's opinion in Pearson v. Callahan, 129 S.Ct. 808 (2009), the Saucier two-step analysis is no longer an inflexible progression. Post-Pearson, the courts are now free to answer the second step first.

addressing the questions in the order set out in <u>Saucier</u>, first determines that no constitutional violation occurred, the inquiry ends there. If, however, the alleged conduct amounts to a constitutional violation, the Court then asks whether the right was clearly established at the time of the conduct.

In this case, the defendants clearly were acting within their discretionary authority at the time of the events alleged. They invoked the defense of qualified immunity; and the burden then shifted to the plaintiff to establish that the defendants are not entitled to judgment on that basis. She has not done so. Here, where it is concluded that there was no constitutional violation by the defendants, even when construing the facts in the light most favorable to the plaintiff/non-movant Collins, the inquiry ends there, and there is no necessity to reach the second question.

### III    CONCLUSION

In sum, defendants Porter, Thornton, Love, and Patterson are entitled to summary judgment, because there is no showing by the plaintiff that they were deliberately indifferent [and therefore there was no constitutional violation], and because the defendants are entitled to qualified immunity.

It is therefore recommended that: 1) the motion for summary judgment filed jointly by defendants Porter, Thornton, Love, and Patterson (DE#63) be GRANTED as to all claims and defendants; and 2) this case be CLOSED.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Dated: April 7th, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

```
cc:   Gwendolyn Carrie Collins, Pro Se
      DC# M13022
      Homestead Correctional Institution
      19000 S.W. 377th Street
      Florida City, FL 33034-6499


      Kathleen M. Savor, Esquire
      Assistant Attorney General
      OFFICE OF THE ATTORNEY GENERAL
      110 Southeast Sixth Street, 10th Floor
      Ft. Lauderdale, Florida 33301
```